


U.S. Department of Justice

Civil Rights Division

Office of the Assistant Attorney General

Washington, D.C. 20530

November 12, 1992

Philip Henry Pitts, Esq.
Pitts, Pitts & Thompson
P.O. Drawer 537
Selma, Alabama 36702-0537

Dear Mr. Pitts:

This refers to the 1992 redistricting plan for city council districts for the City of Selma in Dallas County, Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c. We received your initial submission on September 14, 1992; supplemental information was received on October 29, 1992.

We have considered carefully the information you have provided, as well as Census data and information received from other interested parties. According to the 1990 Census, between 1980 and 1990, the black share of Selma's population increased from 52.1 percent to 58.4 percent. There are eight members of the Selma city council elected from single-member districts, with a ninth councilmember, the council president, elected at large. Under the existing plan, blacks constitute a significant majority of the population in Districts 5, 6, 7, and 8 (83, 96, 98, and 93 percent black, respectively).

Despite the increase in the city's black population proportion, the proposed plan continues to concentrate black population in four districts at percentages that are 78, 95, 92, and 92 percent black while fragmenting black populations in other districts. In the context of the electoral history and the pattern of racially polarized voting in the City of Selma, it appears that this plan will limit black voters to an opportunity to elect no more than four members of council, as black voters repeatedly have been unable to elect candidates of their choice in citywide elections.

cc: Public File

Moreover, our review indicates that the extremely heavy concentration of blacks in each of Districts 5 through 8 is not necessary in order to assure that black voters will have an opportunity to elect their candidates of choice in these districts. While some of this overconcentration may be attributable to segregated residential patterns, it appears that there were other redistricting options available that satisfy the City's legitimate redistricting criteria without limiting unfairly the ability of black voters in the city as a whole to elect councilmembers.

In fact, during the redistricting process, an alternative plan, supported by the black community, that balanced the city's black population among the districts and created five in which black voters would be able to elect their chosen candidates was considered and rejected by the white councilmembers. While the Selma city council was not required to adopt a particular plan advocated by the black community, the city is required to show that the proposed plan was not adopted, at least in part, by a desire to deny or abridge the right to vote on account of race or color. In this regard, the reasons presented to us for rejecting this alternative plan appear to be pretextual, motivated by the desire to confine black population concentrations into a predetermined number of districts, and thus ensure a continuation of the current white majority on the council.

Under Section 5 of the Voting Rights Act, the submitting authority has the burden of showing that a submitted change has neither a discriminatory purpose nor a discriminatory effect. See Georgia v. United States, 411 U.S. 526 (1973); see also the Procedures for the Administration of Section 5 (28 C.F.R. 51.52). In light of the considerations discussed above, I cannot conclude, as I must under the Voting Rights Act, that your burden has been sustained in this instance. Therefore, on behalf of the Attorney General, I must object to the 1992 redistricting plan for the Selma city council.

We note that under Section 5 you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed redistricting plan has neither the purpose nor will have the effect of denying or abridging the right to vote on account of race or color. In addition, you may request that the Attorney General reconsider the objection. However, until the objection is withdrawn or a judgment from the District of Columbia Court is obtained, the 1992 redistricting plan continues to be legally unenforceable. See Clark v. Roemer, 111 S. Ct. 2096 (1991); 28 C.F.R. 51.10 and 51.45.

- 3 -

To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action the City of Selma plans to take concerning this matter. If you have any questions, you should call George Schneider (202-307-3153), an attorney in the Voting Section.

Since the Section 5 status of the redistricting plan is a matter before the court in Hines v. Smitherman, No. 92-0641-BH-M (S.D. Ala.), we are providing a copy of this letter to the court in that case.

Sincerely,

John R. Dunne
Assistant Attorney General
Civil Rights Division

cc: Honorable William Brevard Hand
    U. S. District Judge



U.S. Department of Justice

Civil Rights Division



PLAINTIFF'S EXHIBIT 20

Office of the Assistant Attorney General

Washington, D.C. 20530

June 2, 1986

Cartledge E. Blackwell, Jr., Esq.
Blackwell and Keith
P. O. Box 592
Selma, Alabama   36702

Dear Mr. Blackwell:

    This refers to the election of members from four single-member districts and the districting plan for the county commission in Dallas County, Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c. We received your submission on April 1, 1986.

    We have considered carefully the information you have provided, as well as comments and information from other sources and interested parties. We are aware, of course, that the submitted voting changes were developed in response to the order of the federal district court which found that the county's existing at-large structure for electing county commissioners violates Section 2 of the Voting Rights Act, as amended. In order to obtain preclearance pursuant to Section 5, the county must demonstrate that the submitted voting changes "[do] not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color." 42 U.S.C. 1973c. See also Georgia v. United States, 411 U.S. 526 (1973); Procedures for the Administration of Section 5 (28 C.F.R. 51.39(e)).

    The submitted plan changes the method of electing the four commissioners from an at-large election system with residency districts to a single-member district system. This plan, when compared to the existing at-large election system, will enhance the opportunity for black political participation, and therefore is not retrogressive within the meaning of Section 5. Beer v. United States, 425 U.S. 130, 141 (1976). The county must, however, also demonstrate the absence of discriminatory purpose in the enactment of

- 2 -

the proposed election plan. City of Richmond v. United States 422 U.S. 358, 378-379 (1975); see also Busbee v. Smith, 549 F. Supp. 494 (D. D.C. 1982), aff'd, 459 U.S. 1166 (1983).

At the outset, we note that the county commission did not present the proposed districting plan for public consideration and comment, but limited public hearings to general redistricting considerations. The black community thus had no input into or opportunity to comment on this proposed plan prior to its adoption by the commission.

In addition, as we earlier advised you, the proposed plan fragments the black community in the Craig Field area by splitting the existing precinct (5-1) and placing the boundary line for Districts 1 and 4 between two predominantly black low-income housing projects. We have received allegations that this fragmentation was designed to aid the white incumbent in that area by excluding from District 1 an announced black candidate, who resides at Craig Field, along with a sizeable, politically active, black population concentration that has developed there since the compilation of the 1980 Census. No nonracial explanation for the seemingly illogical exclusion of this area from District 1 has been offered. While efforts to protect incumbency do not conclusively evidence discriminatory purpose, the circumstances here suggest that the county commission's actions were motivated, at least in significant part, by racial considerations. See, e.g., Ketchum v. Byrne, 740 F.2d 1398, 1405 (7th Cir. 1984).

For these reasons, I cannot conclude that the county has met its burden of showing that the submitted election plan was not enacted with the intent to deny or abridge the right to vote of black citizens of Dallas County. Accordingly, on behalf of the Attorney General, I must interpose an objection to the plan.

Of course, as provided by Section 5 of the Voting Rights Act, you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that these changes have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race or color. In addition, Section 51.44 of the guidelines permits you to request that the Attorney General reconsider the objection. However, until the objection is withdrawn or a judgment

- 3 -

from the District of Columbia Court is obtained, the effect of the objection by the Attorney General is to make the election of members of the Dallas County Commission from four single-member districts as proposed in the submitted districting plan legally unenforceable. 28 C.F.R. 51.9.

In view of the pending litigation, we are forwarding a copy of this letter to the Honorable W. B. Hand. If you have any questions, feel free to call Steven H. Rosenbaum (202-724-6718), Acting Director of the Section 5 Unit of the Voting Section.

Sincerely,

Wm. Bradford Reynolds
Assistant Attorney General
Civil Rights Division

AUG 1  1986

Cartledge W. Blackwell, Jr., Esq.
Blackwell and Keith
P. O. Box 592
Selma, Alabama  36702

Dear Mr. Blackwell:

This refers to your request that the Attorney General reconsider the June 2, 1986, objection under Section 5 of the Voting Rights Act of 1965, as amended, to the districting plan adopted by the county for the election of the county commission in Dallas County, Alabama. We received your letter on June 23, 1986.

We have reviewed carefully all of the information and arguments provided by you, as well as information received from other interested parties and that obtained through observations made by our own staff. We remain unpersuaded, however, that the submitted districting plan is entitled to preclearance.

At the outset, we note that the arguments set forth in your letter are not materially different from those provided previously. We pointed out in our objection that your proposal unnecessarily fragmented the black community at Craig Field by splitting the existing precinct (5-1)--thereby fracturing the black residential concentration in that area between Districts 1 and 4. While you have asserted in your reconsideration request that the black community residing in the Craig Field/USF Howes area is not significant either in population or in its concentration and contiguity, the geographic and demographic information before us belies such an assertion. Nor did we find any support for your position among those persons who reside in the area.

-2-

Even more disturbing with regard to the proposed plan were assertions that a central purpose for the boundary between Districts 1 and 4 was the protection of a white incumbent from the prospect of running against a viable, competitive black candidate in circumstances where the black candidate would have had a realistic opportunity to win. While other explanations were offered on reconsideration, the county failed to meet its burden of showing that the incumbency considerations were not in fact intertwined with racial motivations. Where, as here, the county has implicated a racially discriminatory purpose in the districting process, we cannot grant Section 5 preclearance to the proposed election plan. Accordingly, the considerations leading to the June 2, 1986 objection remain and, on behalf of the Attorney General, I must decline to withdraw the objection.

Of course, as noted in our earlier letter, Section 5 permits you to seek a declaratory judgment from the United States District Court for the District of Columbia that these changes have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, irrespective of whether an objection has been interposed by the Attorney General. However, until such a judgment is rendered by that court, the legal effect of the objection by the Attorney General is to render the districting plan in question unenforceable. See also 28 C.F.R. 51.9.

To enable this Department to meet its responsibility to enforce the Voting Rights Act, please inform us of the course of action Dallas County plans to take with respect to this matter. In view of the pending litigation, we are forwarding a copy of this letter to the Honorable W.B. Hand. If you have any questions, feel free to call Sandra S. Coleman (202-724-6718), Director of the Section 5 Unit of the Voting Section.

Sincerely,

Wm. Bradford Reynolds
Assistant Attorney General
Civil Rights Division