PLAINTIFF'S EXHIBIT 6

Declaration of Jerome A. Gray

December 7, 2012

I, Jerome Gray, am a resident and registered voter in the city of Evergreen. I am 74 years old. I have been a registered voter in Evergreen since 1974. I have voted in every election since then, including the 2012 primary, runoff, and general elections.

From 1977 to 2006, I was State Field Director of the Alabama Democratic Conference. Through my work as field director involving numerous political campaigns and voting rights issues, I have had many conversations with the Justice Department staffers, Alabama Attorneys General, Secretaries of State, Probate Judges and their staffs, as well as county boards of registrars, and the Alabama League of Municipalities; notwithstanding, I am familiar with the general election laws and practices in Alabama, plus I am especially familiar with past election practices in Conecuh County and in the city of Evergreen.

Given the scope of my political activity I am well-known to Conecuh County and Evergreen city officials. At present, I am Acting Chairman of the Conecuh County Democratic Conference.

On July 31, 2012, I called city hall in Evergreen and asked the city clerk, Ms. Becky Robinson, why my name did not appear on any voter list for the August 28, 2012 municipal election. My telephone call was prompted by a chance discovery that my name had been omitted from two prepared voter lists that had been given out only to qualified candidates. One list was called a "Good List" and the second list was labeled as the "Problem List."

The clerk stated that I was not on either list of registered voters she created because my name did not appear in the city's data base of utility customers. I explained that the utility bills at my residence were in the name of my mother who died two years ago, and were paid through her estate

account. Moreover, in my conversation with the clerk I questioned the legality of this procedure as a violation of state law and the 1965 Voting Rights Act. I also pointed out that the past practice in Evergreen and other municipalities in preparing a voter list involved the clerk starting with the county voter list to determine who resides in the city based on a voter residential address.

At first, Ms. Robison remained firm in wanting to rely on the city utility list as a starting point for assigning eligible active voters to the city's list. Incidentally, when I asked the clerk to check the county board of registrars list to locate my name she found it immediately. By the way, the former city clerk, Mrs. Peggy Howze, who was employed by the city for over 25 years, never used the city utility list data base as a starting point to verify active voters in the city. One of my questions to Ms. Robinson about the new procedure was this: "If the husband pays the utility bill and there are three other voters in that household, including the wife, how will the utility bill data let you know who the other voters are in that household?"

In any case, on the heels of the discovery I reported the matter to the Sectary of State's office and to the Justice Department. In effect, the new procedures resulted in the created of two voters lists. The Conecuh County Branch NAACP counted over 600 people on the Problem Voter List. We identified active voters in the same household who were put on the Problem List, whereas another voter at the same address was on the Good List. According to the clerk, people on the Problem List would have to cast provisional ballots on Election Day if they did not come by city hall to verify their residency prior to the election. Nevertheless, given this background and new procedure, the city didn't publicize or notify voters that they would need to do this, prior to the election.

At any rate, based on the NAACP's review, most of the person identified as Problem List voters were black. For instance, in the majority black District 4, a total of 228 voters were placed on the Problem List. 182 were black or 82.46%!!! Fortunately, since the new practice has been stopped by a

federal court order and by a Justice Department letter to the city's attorney advising against implementing an unprecleared change, I have been designated as a plaintiffs representative to work with the city clerk, under the supervision of Mr. Bert Estes, the special master appointed by the court to oversee the conduct of the election, including the preparation of the voter list. We have worked well together, and much has been accomplished.

When we began our work in October I noticed that persons previously identified as Problem Voters had been renamed "Inactive Voters." The new list had significantly fewer inactive voters than were found on the original Problem Voters List. Due to our vigilance and consensus, 332 active voters have been restored to the voting rolls. Approximately 80 more voters will be recommended to be restored to the voter list who were rendered "Inactive" due to E-911 address changes. Also, when we complete our review of the number of voters who were listed as "Inactive" for not voting regularly, but who voted in the November 6, 2012 General Election, that number is going to be well over 100 voters. In District 1 alone I've identified from the Board of Registrars list a total of 42 "Inactive Voters" who voted in the November 6, 2012 General Election . 24 or 57.14% of those voters were black. Finally, based on the development of the eligible list of active voters that the special master, the city clerk and I have done, we've identified a total of 428 registered voters in District 1. Two Hundred Twenty Seven are white and 201 are black. These numbers mirror what we saw in the 2001 redistricting plan, where black candidate Warrick Maye lost to a white candidate by less than 25 votes.

I swear under penalty of perjury that the foregoing information is true and correct to the best of my knowledge and belief.

*Jerome A. Gray*

Signed By



PLAINTIFF'S EXHIBIT 7

## Declaration of Jerome Gray

I, Jerome Gray, am a black resident and registered voter of the City of Evergreen. I am 74 years of age. I have been a registered voter in Evergreen since 1974. I have voted in every election since then, including the 2012 primary and run-off elections. From 1977 to 2006, I was State Field Director for the Alabama Democratic Conference. During my time as Field Director and my work on numerous political campaigns and voting rights issues, I have had many conversations with Alabama Attorneys General and Secretaries of State and their staffs, and I am familiar with the elections laws and practices in Alabama. I am especially familiar with past election practices in the City of Evergreen.

I am well known to Evergreen city officials. I was born in Evergreen and attended the public schools of Evergreen through high school. I have long been active in local politics and civic affairs. At present I am the Acting Chairman of the Conecuh County Democratic Conference. I have attended and spoken at numerous meetings of the Evergreen City Council, including recent meetings on redistricting.

On July 31, 2012, I called city hall in Evergreen and asked the city clerk, Ms. Becky Robinson, why my name was not on the voter list for the August 28, 2012 election. My call was prompted by a review of copies of two voter lists I'd seen provided only to candidates; one was called a 'good list" and the other called a "problem voter" list.

The clerk stated that I was not on the list of registered voters she had created for the August 28, 2012 election because I was not on the list of city utility customers. I explained that the utility bills for my residence were in the name of my mother, Edith A. Gray, who died two years ago. At present utility bills are paid through her estate. At that point the clerk suggested that I should have the utility bill put in my name. I promptly told her that she would not dictate out family business decisions.

I also pointed out that past and proper practice in Evergreen and other Alabama municipalities was for the clerk to start with the county list of registered voters and determine by voters' addresses which of those voters were eligible to vote in the city elections and in the various city council districts. County precinct boundaries are not coterminous with Evergreen city council districts, but extend from the city into unincorporated areas of the county.

Mrs. Robinson made it clear that she would start and rely heavily on the city utility list to identify residents or to flag voters who were on the county list but not on the utility list. (as the "problem voter" list) or, as in my case, left the off altogether. I spent considerable time trying to correct Ms. Robinson's mistaken impression of her duty, and to persuade her to start with the county list of registered voters rather than the utility list. Ms. Robinson insisted that she had the authority to make policy, to implement new practices and procedures and to question or remove voters even though they were on the county list. The former city clerk, Ms. Peggy Howell, never

made up the city voting list this way. Ms. Howell was employed with the city over 25 years. Mrs. Robinson has been employed several months.

I reported my conversation with Ms. Robinson to the office of the Alabama Secretary of State. That office reported to me subsequently that they called Ms. Robinson and that she had explained that she had heard that I live in Montgomery. They advised her that she should follow the accepted laws governing and preparing voter lists for municipal elections, and admonished her against using any procedure that might be seen as discriminatory or based on information she couldn't defend in court.

It is clear that the city has instituted a new voting practice. The city has never used this process before, and it is not contemplated or permitted by state law. Already, we have counted over 800 people on the "problem voter" list. These voters are not being contacted individually by the clerk. Their names will not be on the city voters list based on the clerk's new procedures. According to the clerk, these people will have to cast a provisional ballot on Election Day. Most of the voters on the problem voter list are black. Also, we have identified people whose names are on the good list who live in the same household as problem list voters. I was amazed to see many dead voters (some of whom have been dead 10 to 20 years) listed on the good list.

The city has not publicized the existence and importance of the problem list so as to alert citizens to its existence prior to the election. Black voters comprise a disproportionate share of the names on the problem list. An unknown number of eligible voters, such as myself, were left off the list and will have to cast provisional ballots. An unknown number of persons who reside outside of the city but who own rental or other residential property in the city could inadvertently be added to the voting rolls because their names may show up on the utility list.

These "problem voter" lists have been available to candidates since July 24, 2012. Based on my experience this new procedure is an extreme departure from state and federal law by the city clerk. Moreover, it will not be possible to create and provide candidates with an accurate list of the voters in the city and in each district for the period required by Alabama law. Based on my experience, the situation will particularly burden black candidates and voters who tend to lack financial resources comparable to their white opponents and rely more heavily on time-consuming "shoe leather" campaigning. Simply put, the August 28, 2012 election cannot be conducted in a manner consistent with state and federal law, or in a manner in which voters reasonably can have confidence in the integrity of the election.

I declare under penalty of perjury that the foregoing is true and correct.

Date:                                    Signed: _____
                                                 Jerome Gray



PLAINTIFF'S EXHIBIT 8

Declaration of Jerome A. Gray

December 7, 2012

I, Jerome Gray, am a black resident and registered voter of the City of Evergreen. I am 74 years old. I am a graduate of Talladega College and Bishop College. I also studied at Yale and Stanford Universities. I am currently the Acting President of the Conecuh County Democratic Conference.

I have substantial experience and expertise in elections in Alabama. I was the State Field Director of the Alabama Democratic Conference from 1977 to 2006. I was the State Political Director of the Obama for President Campaign in 2008, and have been involved in more election campaigns and contests that I can count. I also have extensive experience with the Voting Rights Act. I have been contacted by the United States Department of Justice regarding literally hundreds of Section 5 submissions from Alabama. I have testified and been called as a fact or expert witness in scores of voting rights cases in federal court for more than 20 years. I have drawn more than 100 redistricting plans that have been adopted by local governments. I drew the first redistricting plan adopted by the City of Evergreen in the 1980s. In 2005, I was selected as one of the guest speakers at the United States Department of Justice's day-long ceremony commemorating the 40th anniversary of the voting Rights Act.

I have particular experience with elections in Conecuh County. I was a plaintiff in one of the first voting rights cases filed in the county. Since the late 1970s I have witnessed the following in Evergreen and Conecuh County; 1) the harassment of black voters at the polls within the City of Evergreen; 2) poll lists that have omitted many active black voters from the city's voting rolls; and 3) efforts of white poll watchers to prevent blacks from campaigning legally outside the polling places. Moreover, as recently as the 2008 municipal run-off election between a black candidate and a white candidate for mayor, I witnessed white men standing in the beds of pickup trucks systematically photographing black voters as they approached the polls at each voting locating in Evergreen.

It is clear that elections in Evergreen are characterized by racially polarized voting. White residents vote sufficiently as a block to enable them usually to defeat black candidates who are the choice of the black community, including those instances where black voters have a narrow majority in the voting age population.

In December 2011, while representing the Conecuh County Branch of the NAACP and the Conecuh County Democratic Conference, I formally addressed an Evergreen city council meeting and presented a draft of a redistricting plan in order to make a record and to initiate a dialogue. The council offered no substantive response. After the meeting city attorney Richard Hartley told me that my proposal was "a bit premature." However, he assured me that the black community would be included in the process before the city adopted a plan. That never happened.

Evergreen did nothing to redistrict until April 2012 when an unpublicized "work session" for council members was held on April 19, to discuss developing a new plan. During the course of that meeting, I was called away from another meeting I was attending, and asked to attend the work session in progress by Councilmember Vivian Fountain. When I got to the work session I noticed that two white non-residents of Evergreen were at the meeting. At issue here was the fact that two white non-residents knew about the meeting and were allowed to attend and offer comment, whereas no black voters in Evergreen were given this opportunity to attend and make comments, in advance. I strongly criticized the plan that the council was discussing. I specifically noted that the districts were mal-apportioned. The black District 5 was overpopulated by over six percent, while District 1, adjacent to District 5, continued to have a white voting majority. I asked the council and demographer why some of that black over-population in District 5 was not given to the under-populated District 1. I pointed out further that the black population was "packed" into the existing two majority black districts and that the plan failed to reflect the fact that Evergreen now has a black population majority over 62 percent. In a subsequent council meeting, the council reached an impasse regarding talk about a compromised plan. Consequently, on May 15, 2012, the council pursued their original proposal without any changes. The city council voted and declared that plan 2 was adopted unanimously (although 2 council members voted "nay").

After the city adopted its plan I was unable to get a copy of their Section 5 submission of the new plan. I had to obtain a copy of their submission via our attorneys from the Department of Justice. In my opinion the city of Evergreen has dragged its feet intentionally on redistricting and created a bottleneck and mass confusion

surrounding the election. It declined to take up the matter in a timely fashion, despite our December 2011 invitation for the city to get moving.

Even if there is no controversy, as there clearly is here, we anticipated that the Justice Department could interpose an objection to the plan, usually on the 60th day, or send a detailed request for more information. If that happened, we knew that the 62-daty period for the Justice Department's review could start all over again, and the election might get delayed.

In this case, the city submission: 1) did not request expedited consideration of the 2012 Plan; 2) it mislabels the map of the 2011 plan as the "Proposed Plan;" 3) it does not include information identified by the Attorney General in his redistricting guidance as important to the review of redistricting plans, including "public statements of members of the adopting body or other who may have played a significant role in the process,.....the historical background of the decision;.....the sequence of events leading up to the decision;.....whether the challenged decision departs, either procedurally or substantively, from the normal practice; and contemporaneous statements and viewpoints held by the decision-makers, elections history and voting patterns within the jurisdiction, voter registration and turnout information; plans that were actually considered or drawn by the submitting jurisdiction, as well as alternative plans presented or made known to the submitting jurisdiction by interested citizens."

Consequently, as a result of the city's inexplicable delay in adopting the 2012 Plan, coupled with failing to seek expedited consideration to get Section 5 preclearance, compounded by its unwillingness or failure to provide the information reasonably necessary for the Attorney General's review, the city's decision guaranteed that it would become burdensome to obtain Section 5 preclearance in time for the 2012 Plan to be implemented by August 28, 2012, in accordance with state and federal law.

I declare under penalty of perjury that the foregoing is true and correct.

*Jerome A. Hray*

Signed by