IN THE UNITED STATES DISTRICT COURT
FOR THESOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAN ALLEN, BOBBY WATKINS and ALBERTA LEE | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case Nos.: 1:12-cv-00496—CG-KD-EC |
| CITY OF EVERGREEN, ALABAMA; PETE WOLFF, III, Mayor of the City of Evergreen, Alabama; LUTHER UPTON, DIANE SKIPPER, JOHN SKINNER, JR., VIVIAN FOUNTAIN, and MAXINE HARRIS Council Members of the City of Evergreen, Alabama; BECKY B. ROBINSON, City Clerk for the City of Evergreen, Alabama | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OBJECTION TO AMENDED MOTION FOR A COURT-ORDERED REDISTRICTING PLAN**

Plaintiffs respectfully reply to Defendants' objections to Plaintiffs' Amended Motion for Entry of a Court-Ordered Redistricting Plan. The parties jointly have represented to this Court that the Court is presented with a choice between the plan proposed by the Plaintiffs and the plan adopted by Defendants which has not received Section 5 preclearance. Doc. 17 at 4. Defendants have conceded that federal law prohibits use of their unprecleared plan. Doc. 8. As set forth herein, Defendant's objections to Plaintiffs proposed plan lack any evidentiary support and are inconsistent with well-established law.

1.      Defendants raise one core objection: that Plaintiffs' plan was not drawn with Defendants' proposed plan as a starting point, and departs from Defendants' plan beyond what is

1

necessary to satisfy the Voting Rights Act.  Around this core objection Defendants raise several points.  Neither the core point nor the peripheral arguments is supported by either evidence or law.

   2. First, not one of Defendants' objections is supported by any actual evidence.  The detailed facts presented by the Plaintiffs in its Brief, doc. 21, remain un-rebutted.  Indeed, Defendants have failed to file an Answer to the Complaint, doc. 1, and each of Plaintiff's allegations remains unchallenged.

   3. The plan drawn by Plaintiffs, moreover, has not ignored that drawn by Defendants.  As noted in our Brief, Plaintiffs' proposed plan retains the core of each existing district and retains each incumbent in her or his district. ("To the extent that a racially neutral governmental interest can be discerned in the Evergreen redistricting with any confidence, each district is compact and contiguous. And the plan places the residence of each incumbent council member in a separate district that retains in each case the core of the district from which that member has been elected under both the 2001 and proposed 2012 plans.")  Doc 21 at 19.  Defendants have not disputed these facts, or shown how it is possible to cure the fragmentation and packing of the black population that pervades Defendants' unprecleared plan so as to cure the Voting Rights Act and constitutional violations, without adjustment to every district.

   4. Plaintiffs' challenge to Defendants' proposed redistricting plan is not, as Defendants aver, limited to the boundary between districts 1 and 5.  Doc. 30 at 2-3, 5.  Plaintiffs emphatically have challenged Defendants' entire proposed redistricting plan.  Plaintiffs' Complaint challenged the proposed plan, *inter alia*, because it "intentionally continues the denial to black voters of equal electoral opportunities. The 2012 Plan was drawn with the purpose, and would have the effect, of minimizing and reducing the voting strength of black voters in

Evergreen." Doc. 1 at 2.  The Complaint and Plaintiff's Motion attack the fragmentation of Evergreen's concentrated black population and the "packing" of black voters into districts 4 and 5.  Id.; Doc. 21, *passim*.  The fragmentation of the black concentration involves districts 2 and 3 as well as district 1.  Doc. 21, Ex. 1 and 5 (fragments of black concentration placed in each district.)

    5.    Defendants' reliance on *Perry v. Perez*, 132 S. Ct. 934 (2012) is misplaced.  The situation in Texas with its immense size, 250 counties, 150 legislative districts and tens of thousands of census units could hardly be farther from tiny Evergreen and its five city council districts.  Large areas of Texas were utterly undisputed in that litigation and the Supreme Court held that the district court had erred in changing district boundaries where there was no claim or possibility of a violation of federal law.   In contrast, there simply is no region of Evergreen that is untouched by involvement in the discriminatory character of Defendants' plan: the packing and fragmentation implicate each of the five council districts.

    6.    Contrary to Defendants' suggestion that "the shifts in population" in Evergreen have been "relatively small", doc. 30 at 4, moreover, the population growth of Evergreen has been highly uneven across the city, with an overall population deviation range of nearly 50 percent, doc. 21, Ex. 1.  Evergreen also experienced a dramatic change in its racial composition, with the black population increasing to a 62.4 percent majority.  The variation among districts even as adjusted in Defendant's unprecleared plan remains outside the ordinary plus or minus five percent range, id., despite the command of Alabama law, which requires that in municipal redistricting plans "[e]ach district shall contain as nearly as is possible the same population." Ala. Code 11-43A-97(b), *accord,* Alabama Code 11-40-8 (1975).  The population variations constitute a departure from considerations normally considered important by the decision maker,

and on that basis alone are thus evidence of a racially discriminatory purpose under *Village of Arlington Heights* v. *Metropolitan Housing Development Corp.*, 429 U.S. 252, 266-68 (1977) and Attorney General's Guidance Concerning Redistricting Under Section 5, 76 F. Reg. Vol. 76 No. 27, pp. 7470-7473.  And the variations particularly disadvantage the black community Defendants' Objection offers no explanation or justification of that imbalance.

7. Defendants also aver that Plaintiffs have failed to meet the standard for an injunction under Section 2 of the Voting Rights Act (likelihood of success on the merits).  This is wrong on several counts.  First, Plaintiffs are not seeking a preliminary injunction.  This Court already has enjoined enforcement of Defendants' proposed plan, and indeed did so with the full consent of the Defendants.  Doc. 8.  Second, Plaintiffs have made clear that the standard here is not the Section 2 standard but the less onerous Section 5 standard ("a reasonable probability [that the proposed plan [will fail] to gain § 5 preclearance. And by 'reasonable probability' this Court means in this context that the § 5 challenge is not insubstantial." *Perry v. Perez*, 132 S. Ct. 934 at 942 (2012)).  Finally, the un-rebutted facts set forth in Plaintiffs' Brief (and in the Complaint) do indeed establish a strong likelihood of success on a claim under Section 2 under *Thornburg v. Gingles*, 478 U.S.30, 53 (1986).  Doc. 1; doc. 21.  These same facts also are probative of a racially discriminatory purpose in the enactment of the plan, *Rogers v. Lodge*, 458 U.S. 613 (1982), and thus provide yet more "not insubstantial" evidence that the proposed plan would not pass Section 5 muster.

8. Defendants attempt to dismiss "the body of administrative and judicial precedents developed in Section 5 cases", *McDaniel v. Sanchez*, 421 U.S. 130,149 (1981), cited by Plaintiffs.  Defendants aver that the administrative decisions may have been undermined by changes in the law or political currents.  Doc. 30, n. 1.  Defendants identify no such change,

however: no reversal or refinement of *McDaniel v. Sanchez,* no subsequent administrative decisions with a contrary approach, and no evidence that the current administration has changed its approach to such voting changes.  Defendants grouse in a general way about the Section 5 administrative process; however, they chose to pursue administrative preclearance (but threw up their hands and abandoned the process when asked to present an affirmative case for preclearance) rather than seek a Section 5 declaratory judgment.  Defendants declined to provide basic facts to support their contention that their plan was not adopted with a racially discriminatory purpose.   Defendants complain that the Section 5 administrative process accepts information not under oath, but they have not challenged any of the sworn statements offered by Plaintiffs.  Defendants do not even mention the judicial determinations cited by Plaintiffs, including the District of Columbia Court's most recent Section 5 redistricting decisions.  ("We agree with the United States that this "representation gap" between the number of districts proportional representation would yield and the number of districts the legislature has actually created is a strong indicator of the 'degree of discrimination'." *Texas v. United States*, ___ F. Supp.2d ____, 2012 WL 3671924 at 17 (D.D.C. August 28, 2012)).  See also *State of Texas v, United States*, 831 F.Supp.2d 244, 263 n. 22 (D.D.C. 2011).

      9.      Defendants' objections thus fail to touch the essential facts of this case.  The City of Evergreen having become over 62 percent black, Defendants adopted a redistricting plan that would maintain white voter registration majorities in three of five city council districts.  They did so against the background of a long and ongoing history of racial discrimination in voting, including not least a concurrent racially discriminatory change in procedures for determining which registered voters who reside in Evergreen are eligible to participate in city elections.  The

adoption of the plan was accompanied by each of the *Arlington Heights, supra,* factors showing racial discrimination.

      10.    The unchallenged evidence of these facts plainly satisfies the "not insubstantial" standard of *Perry v. Perez, supra*. The plan proposed by the Plaintiffs fully satisfies the applicable legal standards. Accordingly, this Court should adopt Plaintiffs proposed redistricting plan for a prompt special election of the City of Evergreen.

Dated:  January 26, 2013

Respectfully submitted,

    /s/John K. Tanner
JOHN K. TANNER
3743 Military Road, NW
Washington, DC 20015
john.k.tanner@gmail.com
Admitted pro hac vice
Tel: 202-503-7696

/s/Armardo W. Pitters
ARMARDO W. PITTERS [8998-T64A]
P.O. Box 973
Montgomery, AL 36102
Tel: (334)265-3333
Fax: (334)365-3411
awpitters@pitterslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2013, I served a copy of Plaintiffs' Reply to Defendants Objection to Amended Motion For A Court-Ordered Redistricting Plan to counsel for the parties by email and transmitted these documents to the Clerk for filing in the Federal Court ECF system.

/s/John K. Tanner
JOHN K. TANNER