IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAN ALLEN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CASE NO. 1-13-cv-00107-CG-M |
| | ) |
| CITY OF EVERGREEN, ALABAMA, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO DISMISS, AND
RESPONSE TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND
<u>FOR RELIEF UNDER SECTION 3 OF THE VOTING RIGHTS ACT</u>**

Come now defendants and in response to plaintiffs' motions for summary judgment and relief under § 3 of the Voting Rights Act, *doc. 107-60*, move the Court to dismiss this case, and thereby respond to plaintiffs' motions for summary judgment and for further relief.[1] As grounds for this motion defendants show the following:

- the plaintiffs' claims are moot, the Court has lost subject matter jurisdiction over this case and cannot now rule on the motion for summary judgment or the claim for further relief; and

---

[1] Defendants designate all of their pleadings, motions and other filing in the case in support of their opposition to plaintiffs' motion for summary judgment.

231041.1

- plaintiffs have failed to make the showing required for summary judgment and Section 3 relief.

### The Claims Asserted In The Complaint Are Moot, Thus There Is No Case Or Controversy Before The Court, Which Means The Court Lacks Subject Matter Jurisdiction

The complaint alleged five causes of action:

I – failure to preclear the defendants' then-proposed redistricting plan;

II- failure to preclear the defendants' new procedures for identifying registered voters and problem voters;

III – violation of the Fourteenth Amendment's equal protection clause;

IV- violation of the Fourteenth Amendment's privilege and immunities clause; and

V – violation of § 2 of the Voting Rights Act, in that the then-proposed redistricting plan was adopted with a racially discriminatory purpose.

*Doc. 496-1,* Complaint, *¶¶ 47, 49, 51, 53, and 55.*

The complaint was filed in August, 2012. In the months that followed, this Court, with consent of the parties, appointed a Special Master who, working with a committee composed of plaintiff and defendant representatives, completely revised the City's procedures for building and maintaining a list of municipal election voters, and developed a new voter list that has been put into service. *See, e.g., doc. 107-66,* Final Report of the Special Master*, pp. 2-3.*

In addition, the Court enjoined the defendants to conduct municipal elections using a Court-ordered plan (which was developed by plaintiffs) and under the supervision of the Special Master. The election was held on June 18, 2013, and the Special Master duly certified the uncontested results of the election to the Court in his final report. *Id. at attachment, pp. 6-7.* The Special Master concluded his final report to the Court by identifying six determinations, of which two are really recommendations not relevant here. The other four determinations are that:

- The City of Evergreen now has a complete, fair, and accurate voter list;

- The Board of Registrars has a clear process for identifying municipal voters;

- City leaders have a better understanding of election laws; and

- Plaintiffs and Defendants worked well together to accomplish these results.

*Id. , p. 5.*

There is no allegation that the new voter list and procedures for compiling and maintaining it violate the Fourteenth Amendment, or that the redistricting plan under which the municipal election was held violates the Fourteenth Amendment or § 2 of the Voting Rights Act, or that the results of the election

violate either the Fourteenth Amendment or § 2 of the Voting Rights Act. In short, there is no remaining controversy between the parties.

Now pending before the Court is the plaintiffs' motion for summary judgment, filed in hopes of obtaining a judgment that defendants acted against plaintiffs with racially discriminatory intent, which could open the door for further relief under Section 3. *Doc. 107-60,* Memorandum And Points And Authorities On Behalf Of Motion for Summary Judgment and Motion for Relief Under Section 3 of the Voting Rights Act*, at 1 and n. 2* ("Both Sections 3(a) and 3(c) require a finding of a constitutional violation" of the Fourteenth and Fifteenth Amendments); *Jeffers v. Clinton,* 740 F. Supp. 585, 588 (ED Ark. 1990) (three-judge court)(holding in a Section 3 case that "the same proof of conscious racial discrimination required to show a violation of the Equal Protection Clause of the Fourteenth Amendment is also required in the Fifteenth Amendment."). Because plaintiffs' claims are moot, a ruling on the motion for summary judgment would be an advisory ruling, which the Constitution forbids the Court from making. It necessarily follows that the only remaining action for the Court is to dismiss the case as moot.[2]

---

[2] To be clear, defendants are not arguing that the Court lacks jurisdiction over the non-substantive issue of fees and cost.

The subject matter jurisdiction of federal court depends on the existence of a case or controversy. If there ceases to be a case or controversy between the parties, then the case becomes moot, and the court loses subject matter jurisdiction.

As the Supreme Court observed in *DeFunis v. Odegaard*, 416 U.S. 312 (1974), "[t]he starting point" of mootness analysis "is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *Id.* at 316. "The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *Id.* at 316. The two issues over which the plaintiffs filed suit – the voter list and redistricting – were resolved by the time the Special Master filed his final report. At that time (if not before), the controversy between the parties "clearly ceased to be 'definite and concrete' and no longer 'touch[es] the legal relations of parties having legal interests.'" *Id.* at 317 (brackets in original). In other words, the plaintiffs' claims became and are moot.

The facts in this case are similar to those in *DeFunis*, in which an unsuccessful law school applicant, Marco DeFunis, Jr. made an Equal Protection Clause challenge to the admission standards of the University of Washington Law

School. *Id.* at 314. Between the commencement of DeFunis' action and the appearance of his case before the Supreme Court, DeFunis was admitted to law school and had completed all but his final quarter of instruction. *Id.* at 314-16. At oral argument, counsel for the law school represented to the Court that "the Law School will not in any way seek to abrogate his registration" for this last quarter. *Id*. at 316. In light of this statement, the Supreme Court concluded that it could not rule on DeFunis' constitutional claim:

> Because the petitioner will complete his law school studies at the end of the term for which he has now registered regardless of any decision this Court might reach on the merits of the litigation, we conclude that [we] cannot, consistently with the limitations of Art. III of the Constitution, consider the substantive issues tendered by the parties.

*Id.*  at 319-20 (footnote omitted).

This case is in the same posture as *DeFunis*. The plaintiffs have moved for summary judgment, but the issues between the parties already have been resolved. The parties' dispute over the voting list and the districts from which the City Council was elected has been resolved. This fact prevents the Court from "consider[ing] the substantive constitutional issues tendered by the parties." *Id.;* *see also id. at 317* ("A determination by this Court of the legal issues tendered by the parties is no longer necessary to compel that result, and could not serve to prevent it."). Consequently, the Court cannot rule on the plaintiffs' motions for

summary judgment and for relief under Section 3, and should instead dismiss the complaint.  *Adler v. Duval County School Board,* 12 F.3d 1475, 1478 (11th Cir. 1997)(where students who challenged the inclusion of prayer in public school graduation ceremonies had graduated, making their claims moot, the Eleventh Circuit said it "must vacate the district court's grant of summary judgment to the appellees on the appellants' claims for declaratory and injunctive relief and remand the case to the district court with instructions to dismiss those claims.").

### The Plaintiffs Have Not Proved Intentional Discrimination And Therefore Are Not Entitled To Summary Judgment Or Relief Under Section 3

Assuming in the alternative that the Court has jurisdiction to decide plaintiffs' motion for summary judgment, the plaintiffs have failed to prove that defendants acted with intent to discriminate on the basis of race.

The plaintiffs rely upon the following:

- <u>the allegations of the complaint</u>, *doc. 107-60, pp. 3-7.*  As shown above, these are moot.  In addition, the plaintiffs are estopped from arguing their Section 5 claims by the terms of the Partial Consent Agreement, *doc. 496-8, p. 5*, which states: "To avoid the burdens, cost and division of litigation over these issues, the parties have agreed the Section 5 issues in this lawsuit should be resolved through

the terms of this Partial Consent Decree [sic]." The plaintiffs have received the benefit of the bargain made manifest in the Partial Consent Agreement, and cannot now seek to litigate these issues.

- <u>the defendants' efforts to develop a new voter list for use in municipal elections</u>, *doc 107-60, pp. 7-8.* Although plaintiffs allege that that the defendants adopted new procedures for determining eligible voters as a result of an increase in black population reported in the 2010 Census – "Faced with a black majority in voting age population, defendants adopted a new procedure for determining which registered voters reside within the City of Evergreen."[3] – this fact is disputed. Defendants had to create a new voter list because the old one deliberately was destroyed by an outgoing former mayor. *See also doc. 107-66, Final Report of the Special Master, at 1* ("As it related to the registered voter list for the City of Evergreen, from the previous city election I was told that the former mayor had ordered the list destroyed which I found unbelievable. As a result the current administration had to build its own voter list."). If the defendants can be faulted for the way they went about trying to develop a new voter list – "The methodology used, at best, was as shocking as the destruction of

---

[3] *Doc. 107-60, p. 7, ¶ 7.*

the previous voter list."[4] – this problem resulted not from intent to discriminate on the basis of race, but from an understandable lack of knowledge: "To clarify, the Board of Registrars has never produced a City of Evergreen specific voter list since they had no designation for city voters." *Doc. 107-66, p. 2.* These facts do not indicate an intent to discriminate, and any doubt about this matter is resolved by the defendants' agreement to a partial consent agreement, *doc. 496*-8, Partial Consent Agreement; *see also doc. 496-10,* Joint Motion For Entry Of Order On Election Supervision And Supporting Points And Authorities; *and doc. 496-13*, Order Appointing Special Master.

- <u>the defendants' redistricting plan</u>, *doc. 107-60, pp. 8-10.* Although plaintiffs contend that the defendants' initial redistricting plan was the product of intentional racial discrimination, they have presented evidence only of an alleged discriminatory effect (and defendants deny that they had such intent). Even so, after the lawsuit was filed, defendants sought repeatedly to negotiate new district boundaries with plaintiffs. *E.g., docs. 496-33, p. 2 and 496-35 (joint reports to the Court discussing effort to resolve the redistricting claim).* The fact that these efforts were not successful can be explained as more by the heat of local politics than by allegations of intentional discrimination. *Jeffers*, 740 F. Supp. at 590 ("It is

---

[4] *Doc. 107-66, p. 1*.

perhaps unfortunate, but it is nevertheless true, that one political party will often automatically oppose what another one proposes, and we think this factor accounted for much of what happened here."). The defendants' effort to reach an accommodation with the plaintiffs is inconsistent with the claim of intentional race discrimination.

- <u>information about past discriminatory events in Conecuh County and the City of Evergreen</u>, including opposition to the Voting Rights Act, *doc. 107-60, pp. 10-11;* lawsuits and objections under Sections 2 and 5, *id., pp. 11-12;* the deployment of federal election observers to the County and the City, *id., pp. 12;* hearsay anecdotes about discriminatory acts,[5] *id., pp. 7-8 & 13-16*; the City's allegedly inadequate Section 5 submission and violation of Section 5. *Id., p. 17.* As observed above, the plaintiffs' Section 5 claims were resolved in the Partial Consent Agreement, and cannot be litigated now. The plaintiffs' allegations of historical acts of racial discrimination that occurred 25 or more years ago are not probative of intent by any of the defendants, much less all or a majority of them, and do not demonstrate a need for Section 3 relief. *Shelby County v. Holder,* __ U.S. __, 133 S. Ct. 2612, 2619 (2013) ("current burdens must be justified by

---

[5] Defendants object to plaintiffs' hearsay allegations and move the Court to strike them.

current needs"). Whatever the response of the Conecuh County Board of Directors and County Democratic Executive Committee to the passage of the Voting Rights Act in 1965, *doc. 107-60, p. 10,* – and one can easily suppose they resisted the Act – the plaintiffs have failed to show how that response is probative of intent by the defendants 47 years later in 2012. Similarly, objections to a proposed change in the manner in which persons were elected to the Democratic County Executive Committee in 1982 are too remote in time, and too unrelated to actions by the defendants, to be probative of anything.  If, as plaintiffs allege, the Attorney General has assigned federal observers to monitor elections more in Conecuh County than in any other Alabama county, fairness requires pointing out that 13 of the 14 such occurrences were in the 1980s. *See* http://www.lawyerscommittee.org/projects/section_5. The fact that no observers were appointed in the 20 years from 1986 to 2006 is evidence not of a continuing problem with racial discrimination in the County, but rather of the absence of such, particularly given that the decision by the Attorney General to send observers is *ex parte* and unreviewable or in other words, standardless.[6] This

---

[6] Before sending federal election observers to a § 5 jurisdiction, the Attorney General was required merely to certify that he "has received written meritorious complaints … that efforts to deny or abridge the right to vote under color of law on account of race or color … are likely to occur," or that in his judgment "the assignment of observers is otherwise necessary to enforce the

brings us to the plaintiffs' presentation of most egregious acts of racial discrimination in voting as if they were reasonably current, when in fact they occurred in 1984 or before.[7]  *See 107-60, pp. 13-16.*  The 2002 law review article on which plaintiffs rely makes it clear that these incidents were in 1984 or before. Barry H. Weinberg and Lyn Utrech, *Problems in America's Polling Places: How They Can Be Stopped*, 11 Temp. Pol. & Civ. Rts. L. Rev. 401, 408, n. 33 (indicating these indicants are from discovery in *U.S. v. Conecuh County*, No. 83-1201-H (S.D. Ala. June 12, 1984).

Relief under Section 3 requires a showing of more than one violation of the Fourteenth or Fifteenth Amendment. *Jeffers*, 740 F. Supp. at 600 ("We also think that more than one violation must be shown. The statute [ *i.e.,* Section 3] uses the plural ('violations'), and it would be strange if a single infringement could subject a State to such strong medicine."). Plaintiffs have not met this burden, and therefore are not entitled to relief under Section 3.

---

guarantees of the 14th and 15th amendment." 42 U.S.C. § 1973f(a)(2).  This standard means little, because the Attorney General's decision is unreviewable and thus his discretion is unchecked. *See United States v. Louisiana,* 265 F. Supp. 703, 715 (E.D. La. 1966) *aff'd,* 386 U.S. 270 (1967) ("[T]he appointment of observers is a matter of executive discretion and is not subject to judicial review.").

[7]  Defendants object to this evidence as inadmissible hearsay and move the Court to strike it.

## CONCLUSION

For the reasons shown in this brief, the Court should dismiss the complaint as moot, and deny the motion for summary judgment and relief under Section 3 for the same reasons. Alternatively, the Court should deny the motions for summary judgment and for further relief because plaintiffs have not established that they are entitled to judgment as a matter of law, have not met the prerequisite for Section 3 relief, and there are disputed material facts.

Respectfully submitted this 3rd day of September, 2013.

    *s/Dorman Walker*
    One of counsel for defendants

OF COUNSEL:
Dorman Walker (ASB-9154-R81J)
dwalker@balch.com
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL  36101
334/269-3138
334/269-3115 (fax)

James H. Anderson
janderson@JAandP.com
Jesse Kirk Anderson
jkanderson@JAandP.com
Jackson, Anderson & Patty, P.C.
Post Office Box 1988
Montgomery, AL  36102
334/834-5311
334/834-5362 (fax)

Paul Richard Hartley
hartley@hartleyhickman.com
Hartley & Hickman
Post Office Box 583
Greenville, AL 36037-0583
334/382-6618
334/382-5183 (fax)

**CERTIFICATE OF SERVICE**

      I certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing and/or that a copy of the foregoing has been served by United States Mail, properly addressed, and postage prepaid, to the following:

    A. Wesley Pitters
    Post Office Box 1973
    Montgomery, AL  36102

    John K. Tanner
    3743 Military Road, NW
    Washington, DC  20015

This the 3rd day of September, 2013.

                                          *s/Dorman Walker*
                                          Of Counsel