IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAN ALLEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1-13-cv-00107-CG-M |
| | ) | |
| CITY OF EVERGREEN, ALABAMA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER

Now come defendants and in response to the Court's order of September 4, 2013, *doc. 68,* show the following:

On August 5, 2013, the Court ordered the defendants to file an answer to the plaintiffs' remaining 14th Amendment claims. *Doc. 62.* Because the plaintiffs' remaining claims relate to redistricting and the voter list, and these issues have been resolved by the Court, defendants thought the proper response would be to file a motion to dismiss on the basis of mootness, as a motion to dismiss is under the correct circumstances a proper response to a complaint. This is why defendants filed a motion to dismiss on September 3, 2013. *Doc. 67.* However, the Court's September 4 order makes it clear that defendants' misunderstood

230801.1

their obligation in response to the Court's August 5 order, for which defendants apologize, and now file an answer to the plaintiffs' remaining Fourteenth Amendment claims.

Now come defendants and in response to the Court's order of September 4, 2013, *doc. 68,* show the following:

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this action to enforce their voting rights as guaranteed under the laws and Constitution of the United States.   The 2010 Census has revealed that the single-member districts used for elections of the Evergreen City Council (hereinafter, "2001 Plan") have become mal-apportioned in violation of the 14th Amendment, ~~and that the 2001 Plan districts deny black voters an equal opportunity to elect candidates of their choice in violation of their rights under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.~~[1]

**ANSWER: Defendants admit that the 2010 Census revealed that the 2001 single-member districts used for elections of the Evergreen City Council**

---

[1] To avoid confusion and make it clear which allegations defendants are answering, allegation relating to the Voting Rights Act – which defendants are not answering - are struck through. *See doc. 62* (instructing defendants to answer plaintiffs' remaining 14th Amendment claims); accord doc. 68 ("defendants were directed to file their answer to the plaintiffs' remaining 14th Amendment claims").

(hereinafter, "2001 Plan") had, by 2010, become mal-apportioned, and that it would have been a violation of the 14th Amendment to use the 2001 Plan for municipal elections after the 2010 Census results were published. Defendants deny any remaining allegations in ¶ 1.

2.     ~~Plaintiffs also bring this action to enforce their rights under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  Defendants, after long and intentional delay, adopted new districts by Ordinance 2012-051201 (hereinafter, "2012 Plan").  Defendants now are implementing the 2012 plan districts despite having failed to obtain Section 5 preclearance.~~

3.     Defendants' proposed 2012 Plan fails to cure fully the existing mal-apportionment of council districts, and intentionally continues the denial to black voters of equal electoral opportunities.  The 2012 Plan was drawn with the purpose, and would have the effect, of minimizing and reducing the voting strength of black voters in Evergreen.  The intentional fracturing and packing of black voters into districts 4 and 5 constitutes unlawful vote dilution and discrimination in violation of ~~Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, as well as~~ the Fourteenth ~~and Fifteenth Amendments~~ to the United States Constitution.

**ANSWER: Defendants deny that the redistricting plan passed by the Evergreen City Council on May 15, 2012 had the purpose and effect of denying equal electoral opportunities to black voters, minimizing and reducing the voting strength of black voters, and fracturing and packing black voters in Districts 4 and 5. Whether this plan "fully" cured existing mal-apportionment among districts is a legal question to which no response is required. Defendants deny any remaining allegations in ¶ 3.**

4.      Defendants have also adopted a new, illegal and unreliable system for determining which voters are eligible to vote in the August 28, 2012 election: rather than use the official Conecuh County voter list and determine which persons live within the city limits consistent with state law and past practice, Defendants have created a list of eligible voters from the municipal utility customer list, and a separate list of "Problem Voters" who are registered in Conecuh County and reside within the city limits but who are not billed for municipal utilities.  Such Problem Voters, who constitute over 40 percent of the entire voting age population of the most heavily black city council districts will be subject to challenge by poll watchers and others, will have to prove their residence within the city limits, and/or will have to cast provisional ballots.

Defendants have neither sought nor obtained Section preclearance of the new voter list procedure.

**ANSWER: Defendants admit that because the voter list for municipal elections had been destroyed and no longer was available to use, the City began developing a new voter list as specified in the Partial Consent Agreement, *doc. 8, pp. 3-4,* which included the development of a list of "Problem Voters" whose status as registered voters could not be confirmed, and that this list comprised nearly 30 % of the entire voting age population of the City. Defendants deny any remaining allegations in ¶ 4.**

### REQUEST FOR THREE JUDGE PANEL

5.     ~~Pursuant to 42 U.S.C. § 1973(a) "any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of Section 2284 of Title 28 of the United States Code and any appeal shall lie to the Supreme Court." Plaintiffs, by their counsel, therefore request the Court to notify the Chief Judge of the Eleventh Circuit Court of Appeals that Plaintiffs' claim that Defendants have failed to comply with the preclearance requirements of Section 5 of the Voting Rights Act is required to be heard by a district court of three judges pursuant to 28 U.S.C. § 2284 and 42 U.S.C. § 1973c.~~

**JURISDICTION AND VENUE**

6.      This case is brought pursuant to 42 U.S.C. § 1983, ~~42 U.S.C. § 1973~~ ~~and 42 U.S.C. § 1973c~~.  The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 1357, 2201, 2202, 2284, ~~and 42 U.S.C.~~ ~~§ 1973j(d)~~.  Venue is proper in this district under 28 U.S.C. 1391(b).  The City of Evergreen, Alabama lies within this Judicial District and is the place where the events giving rise to the claim occurred.  Defendant City of Evergreen officials also reside and perform their official duties in this Judicial District.  Upon information and belief, all Defendants reside in the State of Alabama.

**ANSWER: Defendants admit that at the time this case was commenced, plaintiffs' sought relief under 42 U.S.C. § 1983, the Court had jurisdiction, and venue was proper. Defendants admit that the City of Evergreen is located in the Southern District of Alabama and is where the defendants perform their duties, and that all natural defendants reside in the City of Evergreen in the State of Alabama. Defendants deny any remaining allegations in ¶ 6.**

**PARTIES**

7.      Plaintiff Dan Allen is a black citizen and registered voter of the City of Evergreen and a resident of current and proposed council district 5.

**ANSWER: Admitted.**

8.     Plaintiff Bobby Watkins is a black citizen and registered voter of the City of Evergreen and a resident of current and proposed council district 5.

**ANSWER: Admitted.**

9.     Plaintiff Alberta Lee is a black citizen and a registered voter of the City of Evergreen and a resident of current and proposed council district 5.

**ANSWER: Admitted.**

10.     Defendant City of Evergreen is charged with the responsibility of ensuring that its election laws, as applied, comply with the laws and Constitution of the United States, including ~~Sections 2 and 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973 and 1973c and~~ the 14th and 15th Amendments to the United States Constitution.

**ANSWER: Admitted.**

11.     Defendant Pete Wolff III is the Mayor of the City of Evergreen and in that capacity serves as the head of the Executive Branch of city government. Defendant Wolff is charged with the responsibility of legislating and enforcing

compliance with the city ordinances pertaining to the establishment of city council election districts.  Defendant Wolff is sued in this official capacity.

**ANSWER: Admitted that Pete Wolff III was the Mayor of Evergreen when this action was commenced (and is the Mayor today), that the is the head of City's chief Executive officer, and that with the City Council he is responsible for legislating and enforcing compliance with municipal ordinances relating to the City Council's election districts. Admitted that he is sued in his official capacity. Defendants deny any remaining allegations in ¶ 11.**

12.    Defendants Luther Upton, Diane Skipper, John Skinner, Jr., Vivian Fountain and Maxine Harris are Council members of the City of Evergreen City Council and in that capacity charged with the responsibility of legislating ordinances pertaining to the establishment of city council election districts. Defendants Upton, Skipper, Skinner, Fountain and Harris are sued in their official capacities.

**ANSWER: Admitted that Luther Upton, Diane Skipper, John Skinner, Jr., Vivian Fountain and Maxine Harris were members of the Evergreen City Council when this action was commenced (and that Mr. Upton, Mr. Skinner, Ms. Fountain, and Ms. Harris are members of the City Council today), that with the**

**Mayor they are responsible for legislating and enforcing compliance with municipal ordinances relating to the City Council's election districts. Admitted that they is sued in their official capacities. Defendants deny any remaining allegations in ¶ 12.**

13.     Defendant Becky B. Robinson is the City Clerk for the City of Evergreen and in such capacity presides over the election process, including the preparation of lists of persons eligible to vote in the City of Evergreen and within each city council district, candidate qualifying, and running the municipal elections; and certifies the results of elections as well as actions taken by the City of Evergreen City Council.  Defendant Robinson is sued in her official capacity.

**ANSWER: Admitted.**

## FACTS

**Evergreen Background**

14.     The City of Evergreen is governed by a major and five council members.  The mayor is a voting member of the Council and is elected at-large for a four-year term.  Council members are elected from single-member districts to

serve concurrent four-year terms.  General elections occur in August of Presidential election years.

**ANSWER: Admitted, except that by agreement of the parties and order of the Court, *doc. no. 8, p. 6,* there was no municipal election in August 2012.**

15.    Evergreen and Conecuh County have a history of racial discrimination in voting, including harassment and direction of racial slurs to black voters.  As recently as the 2008 municipal election, white men standing in the beds of pickup trucks systematically photographed black voters as they approached the polls.

**ANSWER: Admitted that acts of racial discrimination directed towards black persons, including harassment and racial slurs, have occurred in Conecuh County and the City of Evergreen, and that during the 2008 municipal election there were reports of white me photographing black voters at the polls. However, the photographers were not agents of the City of Evergreen or of the defendants.  Defendants deny any remaining allegations in ¶ 15.**

16.    Elections in Evergreen are characterized by racially polarized voting. White residents vote sufficiently as a bloc to enable them usually to defeat black

10

candidates who are the choice of the black community, including where black voters have a narrow majority of voting age population.

**ANSWER: Admitted that usually white and black Evergreen voters vote for white or black candidates, respectively, and that voting is thus racially polarized. Many black residents casts votes for Mayor Wolff in the most recent municipal election, and he was endorsed by a leader in the African American community. .**

**Results of the 2010 Census**

17.    The City of Evergreen received the results of the 2010 Census on or before April 1, 2011.   According to the 2010 Census, Evergreen has 3,944 residents, of whom 2,467 (64.55%) are black (i.e., non-Hispanic African Americans), up from only 52.8 percent black in 2000.   Between 2000 and 2010, the white population of Evergreen declined by 305 persons (from 1678 to 1373) while the black population increased by 546 (from 1916 to 2462).   The 2010 census also showed that for the first time, Evergreen has a black majority of 56.76 percent in voting age population.

**ANSWER: Admitted that the 2010 Census determined the total population of Evergreen was 3,944, of which 2,462 or 62.4 % were black and 1,373 or 34.8 %**

are white.[2] **Admitted that the 2000 Census reported that Evergreen's total population was 3,630, or which 1,916 or 52.78 % were black and 1,678 or 46.23% were white.[3] Admitted that between 2000 and 2010 the black population increased by 546 and the white population decreased by 305. Defendants deny any remaining allegations in ¶ 17.**

18.     The 2010 census also revealed that the districts in Defendants' 2001 Plan now vary from the ideal population of 789 persons by nearly 50 percent, from a low of 630 persons (-18.88%) to a high of 1,034 persons (+31.05%).

**ANSWER: Admitted when 2010 Census data are loaded into 2001 city council districts, the districts are mal-apportioned as described in ¶ 18. Defendants deny any remaining allegations in ¶ 18.**

19.     Under the 2001 Plan, over 59 percent of all black residents of Evergreen reside in two districts, districts 4 and 5, which together are overpopulated by an average of over six percent, and in excess of the constitutional limit of plus or minus five percent.  Both district 4 (92.5% black) and

---

[2]http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=DEC_10_DP_DPDP1
[3] http://censusviewer.com/city/AL/Evergreen/2000

district 5 (83.66%) black) are "packed", that is, both districts have black majorities far in excess of the level needed to offer black voters an equal opportunity to elect candidates of their choice to the city council.   The remaining black population of Evergreen is fragmented among the other city council districts.

**ANSWER: Admitted that when 2010 Census date are loaded into the City's 2001 city council districts, over 59 %of black residents reside in Districts 4 and 5, which are overpopulated by an average of over 6 %, and that other black residents are in Districts 1, 2, and 3. The allegation that both districts are packed is both a legal conclusion to which no response is needed. Defendants deny any remaining allegations in ¶ 19.**

20.    The 2010 Census established that the black population of Evergreen is sufficiently large and geographically compact for black voters to comprise a sufficiently large majority of voting age citizens in at least three council districts for Black voters in those districts to enjoy an equal opportunity to elect representatives of their choice to the city council.

**ANSWER: Admitted that it was possible to draw three majority black districts based on the 2010 Census and housing patterns in the City of Evergreen. Defendants deny any remaining allegations in ¶ 20.**

**Redistricting Efforts after the 2010 Census**

21. ~~Defendants have authority under Alabama law to enact or administer voting qualifications or prerequisites to voting, or standards, practices, or procedures with respect to voting different from those in force or effect on November 1, 1964.~~

22. The United States Constitution requires that municipal city council districts have equal populations, so that no districts exceeds or falls below the ideal population by more than five percent.  Even five percent variations may violate the Constitution where they disadvantage a particular population.  *Larios v. Cox*, 300 F. Supp. 2d 1320 (N.D. Ga. 2004) (three-judge court), *aff'd mem.*, 542 U.S. 947 (2004).

**ANSWER: Admitted that the United States Constitution's 14th Amendment's one person, one vote requirement mandates single-member districts from which members of a city council are elected to have nearly equal populations. Admitted that even a 5% population may violate this constitutional requirement. Defendants deny any remaining allegations in ¶ 21.**

23.    Black citizens of Evergreen formally addressed a December 2011 council meeting and requested that Defendants adopt a specific redistricting plan. That plan proposed to reduce the over-population deviations below plus or minus five percent and provided for a black population majority in district 1 of 58.55 percent.  The city attorney stated that the proposal was "a bit premature."

       **ANSWER: Admitted.**


24.    On information and belief, notwithstanding the statement of the city attorney, Defendants had prepared a redistricting plan identical to the plan it ultimately adopted by September 2011.  The city did not, however, make that plan public until April 2012, the city finally distributed to members of the city council a draft ordinance dated for passage in September 2011 and setting the boundaries of the 2012 Plan.

       **ANSWER: Admitted that the defendants began the redistricting process in December 2011, and that a redistricting ordinance was introduced for consideration by the city council at its March 9, 2012 meeting.  Defendants deny any remaining allegations in ¶ 24.**

25.     Prior to the adoption of the 2012 Plan, Defendants failed to conduct public hearings on the 2012 Plan and failed to publish the Plan in the local newspaper for two consecutive weeks.

**ANSWER: Denied.**


26.     Defendants conducted a "working session" on the plan on April 19, 2012.  During the course of the meeting one council member determined from the attendance of two non-resident white persons that the meeting was not properly an executive session and alerted local black citizens, who arrived and discussed alternative plans, including a compromise plan that would have reduced the over-population of district 5 from +6.34 percent to +3.24 percent, or below the five percent limit; reduced the under-population of district 1 from -3.27 percent to -0.25 percent; and would have raised the black percentage in district 1.

**ANSWER: Denied.**


27.     Defendants failed to make a record of the April 19, 2012 meeting or the alternative plans proposed and considered, and such failure violated the Alabama Open Meetings Act.

**ANSWER: Denied.**

28.    The demographer retained by the city to draw the plan acknowledged before the city council that the compromise plan was fairer than the plan that the adopted 2012 Plan.  Notwithstanding this counsel, Defendants suspended the rules and declared the 2012 Plan adopted unanimously (although two council members voted "nay") on May 15, 2012.

**ANSWER: Denied that the demographer retained by the city to draw the plan acknowledged before the city council that the compromise plan was fairer than the 2012 Plan.  As to action taken by the city council at the May 15, 2012 meeting, the minutes of that meeting are the official record of those events, and the minutes speak for themselves. Defendants deny any remaining allegations in ¶ 28.**

29.    The 2012 Plan packs black population into two districts, districts 4 and 5, both of which are over 86.5 percent black in population.  The remaining black population is fragmented among districts 1, 2 and 3, none of which is less than 35.6 percent black in population.  District 5 is over-populated in excess of five percent.

**ANSWER: Admitted that districts 4 and 5 were both over 86.5 % black, and that black residents who were not in those districts were in districts 1, 2, or 3, none of which was less than 35.6 % black. The allegation that districts were packed is a legal conclusion to which no repose is necessary. Defendants deny any remaining allegations in ¶ 29.**

**Lack of Section 5 Compliance as to Redistricting**

30.   ~~The City of Evergreen, Alabama, is subject to the preclearance requirements of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c which provides that any "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" different from that in force or effect in Evergreen on November 1, 1964, may not be lawfully implemented unless the City obtains either a declaratory judgment from the United States District Court for the District of Columbia that the change is free of any racially discriminatory purpose or effect; or of the change has been submitted for review to the United States Attorney General, and the Attorney General has not interposed an objection within 60 days.  42 U.S.C. 1973c.  The 2012 Plan is a change affecting voting subject to the preclearance requirements of Section 5.~~

31.   ~~Defendants did not submit the 2012 Plan to the Attorney General for administrative review under Section 5 of the Voting Rights Act until June 12, 2012.~~

~~That submission was received by the Attorney General on June 15, 2012. The City also failed initially to submit a "shapefile" of its plan's demographic data, see Procedures for the Administration of Section 5, 28 C.F.R. 51.28(a)(6), but provided that information late so that it was received by the Attorney General on July 23, 2012, or only 36 days before the August 28, 2012 election. Defendants subsequently submitted a document provided by their demographer on July 30, 2012, or only 29 days before the August 28, 2012 election. The receipt of additional information extends the 60-day period for the Attorney General's review. 28 C.F.R. 51.39(a)(1).~~

~~32.     Defendants' submission did not request expedited consideration of the 2012 Plan pursuant to the Procedures for the Administration of Section 5, 28 C.F.R. 51.34; it mislabels the map of the 2001 plan as the "Proposed Plan"; and it does not include information identified by the Attorney General as important to the review of redistricting plans, including "public statements of members of the adopting body or others who may have played a significant role in the process ...the historical background of the decision; ...the sequence of events leading up to the decision; ...whether the challenged decision departs, either procedurally or substantively, from the normal practice; and ...contemporaneous statements and viewpoints held by the decision-makers...election history and voting patterns~~

within the jurisdiction, voter registration and turnout information; …plans that were actually considered or drawn by the submitting jurisdiction, as well as alternative plans presented or made known to the submitting jurisdiction by interested citizens."   Guidance Concerning Redistricting Under Section 5, 76 F.Reg. Vol. 76 No. 27, pp. 7470-7473.

33.   Where a submission fails to provide sufficient information for the Attorney General to make a decision within 60 days, he can request additional information, and the 60 day period restarts only upon receipt of the full information necessary for his review.  28 C.F.R. 51.37.

34.   As a result of the Defendants' delay in adopting the 2012 Plan; in seeking Section 5 preclearance of the 2012 Plan; in failing to seek expedited consideration; and in failing to provide the information reasonably necessary for the Attorney General's review, Defendants effectively have guaranteed that they would not obtain Section 5 preclearance in time for the 2012 Plan to be implemented in accordance with state and federal law.

35.   Defendants in fact have not obtained Section 5 preclearance of the 2012 Plan from the Attorney General, nor have Defendants obtained a judgment from the United States District Court for the District of Columbia pursuant to Section 5 declaring that the proposed districts and annexations have neither the

~~purpose nor the effect of denying or abridging the right to vote on account of race or color.~~

~~36.     Despite the absence of Section 5 preclearance and despite a contrary representation in its submission, Defendants have begun to conduct the 2012 election for mayor and council members using the 2012 plan.   Defendants have assigned voters based to districts based on the 2012 plan; have accepted candidate filings and assigned candidates to council districts based on the uncleared district boundaries; have provided on July 24, 2012 voter lists to candidates based on the 2012 plan boundaries; and have distributed and are distributing absentee ballots based on the 2012 plan boundaries, all in violation of Section 5 of the Voting Rights Act.~~

~~37.     Unless enjoined by this Court, Defendants will continue to violate Section 5 of the Voting Rights Act by continuing to administer and implement the uncleared district boundaries on and beyond the August 28, 2012 Election Day, including by swearing the prevailing candidates into office.~~

**Change in List of Registered Voters Procedures**

38.     In preparing the voter list for the city and each of the city council districts, Defendants departed from past practice.   Consistent with Alabama law,

in preparing lists of voters eligible to cast ballots in municipal elections the practice in Evergreen, as in Alabama generally, has been for the clerk to identify those persons who are on the county voter registration list whose addresses are within the city limits.

**ANSWER: Admitted that defendants departed by necessity from past practice by preparing a new voter list for the municipal election because the previous voter list no longer existed. Defendants deny any remaining allegations in ¶ 38.**

39.    Defendants have instituted as separate procedure for the August 28, 2012 election.  Defendants have prepared a voter list based on the intersection between the list of city utility customers and the list of registered voters.  Persons who are registered to vote in Conecuh County are deemed eligible to vote in city elections if and only if their names appear on the list of city utility customers.

**ANSWER: Admitted that when this action was commenced, defendants were preparing a new list for the August 2012 municipal election out of necessity, and that this list was never completed and never was used to administer an election. Admitted that defendants departed from past practice by necessity by preparing a new voter list for the municipal election because the**

**previous voter list no longer existed. Defendants deny any remaining allegations in ¶ 39.**

40.     Some registered voters whose names do not appear on the list of utility customers have been placed on a separate list of "Problem Voters."  Voters on that list are to be required to prove their residence within the city before the election or at the polls on Election Day.  Other registered voters known to reside within Evergreen have been left off the voter list entirely.  It also is possible under Defendants' new system that individuals who own rental or other property within the city limits but who themselves live outside the city limits will be allowed to vote under this system even though they are not eligible.

**ANSWER: The parties stipulated to this allegation in the Partial Consent Agreement. *Doc. 8, p. 4.* Defendants deny any remaining allegations in ¶ 40 to which they have not stipulated.**

41.     The Problem Voters list affects an extraordinary number of voters. The Problem Voters list for district 4 contains the names of 220 voters.  District 4 has a 2010 voting age population of only 517 persons, so that over 42 percent of

the entire voting age population of the district is on the problem list.  Over 83

percent of the voting age population if district 4 is black.

**ANSWER: Admitted.**


42.     As a result of the new system, voters whose names appear on the

Problem Voters list will face new burdens to prove their eligibility and/or have to

fill out additional forms, face challenges to their eligibility from poll watchers, and

endure explanation, discussion and argument at the polls.

**ANSWER: Admitted that if the voter list had been completed and used for
a municipal election, a voter who remained on the Problem Voters list – which
more properly should have been called the "Problem Addresses" list - would
have had to demonstrate residence within the City before voting. Defendants
deny any remaining allegations in ¶ 42.**


43.     Defendants have implemented this system by distributing the

Problem Voters lists developed under the new system to candidates for city office

as the official list of voters for the 2012 city election, and thus to other

individuals.

**ANSWER: Admitted that the Problem Voters list was given to candidates for city offices and others, but denied that the voter list was completed or used in the administration of an election.  Defendants deny any remaining allegations in ¶ 43.**

44.   ~~The Problem Voters list procedure adopted and enforced by Defendants constituted a change affecting voting subject to the preclearance requirements of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c.  Defendants have not obtained preclearance from the Attorney General and have not received a Section 5 declaratory judgment from the United States District Court for the District of Columbia.~~

45.   ~~Unless enjoined by this Court, Defendants will continue to violate Section 5 of the Voting Rights Act by continuing to administer and implement the unprecleared procedures for creating its municipal voter list on and beyond the August 28, 2012 Election Day.~~

**~~CLAIM 1~~**

46.   ~~Plaintiffs reallege all paragraphs above as if set forth in fully herein.~~

~~47.   Defendants' proposed redistricting plan (2012 Plan) cannot be administered legally because the plan has not been precleared pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.~~

## ~~CLAIM II~~

~~48.   Plaintiffs reallege all paragraphs above as if set forth in fully herein.~~

~~49.   Defendants' procedure for identifying registered voters and "Problem Voters" for municipal elections cannot be administered legally because the plan had not been precleared pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.~~

## CLAIM III

50.   Plaintiffs reallege all paragraphs above as if set forth in fully herein.

**ANSWER: Defendants restate their response to all paragraphs above.**

51.   The facts alleged herein constitute a denial to the plaintiffs of the equal protection of the laws as guaranteed to them by the Equal Protection Clause of Section 1 of the 14th Amendment to the United States Constitution.

**ANSWER: Denied.**

**CLAIM IV**

52.     Plaintiffs reallege all paragraphs above as if set forth in fully herein.

**ANSWER: Defendants restate their response to all paragraphs above.**


53.     The facts alleged herein constitute an abridgement of the privileges and immunities of citizenship guaranteed to Plaintiffs by the Privileges and Immunities Clause of Section 1 of the 14th Amendment to the United States Constitution.

**ANSWER: Denied.**


~~CLAIM V~~

54.     ~~Plaintiffs reallege all paragraphs above as if set forth in fully herein.~~

55.     ~~The proposed 2012 plan violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, in that it was adopted with a racially discriminatory purpose and by minimizing and diluting the opportunities for black voters to participate in the political process, and to elect a candidate of their choice to the Evergreen City Council.~~

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.      Assume jurisdiction of this action and immediately convene a three-judge district court pursuant to 28 U.S.C. § 2284 to hear the claims under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c and that such Court enter an order:

(a)     ~~Declaring that Defendants' ongoing conduct of the August 28, 2012 election under the 2012 Plan, Ordinance 2012-051201 constitutes a change affecting voting within the meaning of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, and that the conduct of the 2012 election under such plan is legally unenforceable because Defendants have not received the requisite preclearance under Section 5 of the Voting Rights Act;~~

(b)     ~~Enjoining Defendants, their agents, their successors in office, and all persons acting in concert with them, from further implementation of the 2012 Plan for the August 28, 2012 election and from implementing any future voting change unless and until Section 5 preclearance for such change is obtained; and~~

(c)     ~~Ordering Defendants to reschedule the cancelled August 28, 2012 election under a plan that complies with state and federal law at the earliest possible date under the supervision of this Court;~~

(d)     ~~Declaring that Defendants' ongoing conduct of the August 28, 2012 election using a new, utility customer-based voter list constitutes a change affecting voting within the meaning of Section 5 of the Voting Rights Act of 1965,~~

~~as amended, 42 U.S.C. § 1973c, and that the conduct of the 2012 election using such list is legally unenforceable because Defendants have not received the requisite preclearance under Section 5 of the Voting Rights Act;~~

(e)   ~~Enjoining Defendants, their agents, their successors in office, and all persons acting in concert with them, from further using the new, utility customer-based voter list the August 28, 2012 election or for any subsequent election, from recognizing any challenge to any voter's eligibility based on such list, and from implementing any future voting change unless and until Section 5 preclearance for such change is obtained; and~~

(f)   ~~Order Defendants to reschedule the cancelled August 28, 2012 election to ensure that the election complies with state and federal law at the earliest possible date under the supervision of this Court and with appropriate supervision by a special master or other equity.~~

**ANSWER: Defendants deny that plaintiffs' are entitled to the relief that they seek.**

2.   And that this Court further:

(a)     Issue a declaratory judgment finding that the 2001 Plan Evergreen city council districts are malapportioned in violation of the Fourteenth Amendment to the United States Constitution;

(b)     Issue a declaratory judgment, that the current 2001 Plan Evergreen city council districts violate Plaintiffs' rights under the aforesaid provisions of the United States Constitution ~~and Section 2 of the Voting Rights Act~~;

(c)     Enjoin the use of the current 2001 Plan Evergreen city council districts in the August 28, 2012 municipal election and any subsequent election;

(c)     ~~In the unlikely event that Section 5 preclearance of the 2012 Plan (Ordinance 2012-051201) is obtained, issue a declaratory judgment finding that the 2012 proposed redistricting plan was enacted with a racially discriminatory purpose in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and the Fourteenth and Fifteenth Amendments to the United States Constitution~~;

(d)     Enjoin permanently the Defendants, their officers, agents, employees attorneys, successors in office, and all persons acting in concert or participation with them, from conducting any election using the 2012 Plan (Ordinance 2012-051201), or any other districting plan that violates the United States Constitution ~~and/or federal law~~;

(e)     Order into effect a new redistricting plan that meets the requirements of the United States Constitution ~~and federal and state law~~;

(f)     Order into effect a schedule for a special election for the City of Evergreen at the earliest practicable date;

(g)     Issue an order requiring Defendants to pay Plaintiffs' cost, litigation expenses, expert witness fees, and reasonable attorneys' fees incurred in the prosecution of this action; and

(h)     Grant such other and further relief as it deems is proper and just.

**ANSWER: Defendants deny that plaintiffs' are entitled to the relief that they seek.**

## AFFIRMATIVE DEFENSES

1.     This case is moot because there no longer is a live case or controversy before the Court.

2.     The request for a declaratory judgment that the 2001 Plan Evergreen city council districts are mal-apportioned in violation of the Fourteenth Amendment to the United States Constitution is moot.

3.     The request for a declaratory judgment that the current 2001 Plan Evergreen city council districts violate Plaintiffs' rights under the United States Constitution is moot.

4.     The request to Issue a declaratory judgment, that the current 2001 Plan Evergreen city council districts violate Plaintiffs' rights under the United States Constitution is moot.

5.     The request for an injunction barring the use of the current 2001 Plan Evergreen city council districts in the August 28, 2012 municipal election and any subsequent election is moot.

6.     The request to enjoin permanently the defendants, their officers, agents, employees attorneys, successors in office, and all persons acting in concert or participation with them, from conducting any election using the 2012 Plan (Ordinance 2012-051201), or any other districting plan that violates the United States Constitution is moot.

7.     The request to order into effect a new redistricting plan that meets the requirements of the United States Constitution ~~and federal and state law~~ is moot.

8.     The request to order into effect a schedule for a special election for the City of Evergreen at the earliest practicable date is moot.

9.      The request for such other and further relief as the Court deems is proper and just is moot.

10.     The Court lacks subject matter jurisdiction over this case.

11.     The defendants did not act with discriminatory intent towards the plaintiffs or towards the African -American residents for the City of Brundidge.

12.     Plaintiffs are not entitled to any further relief.

13.     Plaintiffs are barred by laches form any further relief.

14.     Plaintiffs have not met the conditions necessary for relief under Section 3 of the Voting Rights Act.

Respectfully submitted this 11th day of September, 2013.


                                        *s/Dorman Walker*
                                        One of counsel for defendants

OF COUNSEL:
Dorman Walker (ASB-9154-R81J)
dwalker@balch.com
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL  36101
334/269-3138
334/269-3115 (fax)


                                        *s/James Anderson*
                                        One of counsel for defendants

James H. Anderson
janderson@JAandP.com
Jesse Kirk Anderson
jkanderson@JAandP.com
Jackson, Anderson & Patty, P.C.
Post Office Box 1988
Montgomery, AL  36102
334/834-5311
334/834-5362 (fax)

                                        *s/Richard Hartley*                                     
                                        One of counsel for defendants

Paul Richard Hartley
hartley@hartleyhickman.com
Hartley & Hickman
Post Office Box 583
Greenville, AL 36037-0583
334/382-6618
334/382-5183 (fax)

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing and/or that a copy of the foregoing has been served by United States Mail, properly addressed, and postage prepaid, to the following:

A. Wesley Pitters
Post Office Box 1973
Montgomery, AL  36102

John K. Tanner
3743 Military Road, NW
Washington, DC  20015

This the 11th day of September, 2013.

_s/Dorman Walker_
Of Counsel